[No. 21288. Department Two. June 13, 1928.]

GERTRUDE M. WETZEL, *Respondent,* v. W. R. CLISE *et al., Appellants.*[1]

[1] TRADEMARKS AND TRADE NAMES (8)—UNION LABELS—INJUNCTION AGAINST USE. Prejudicial error cannot be assigned upon enjoining an unlawful distribution of union labels which defendant was not distributing or intending to, where no costs were allowed against the defendant, and no injury could result.

[2] SAME (6)—RIGHT TO USE NAME—CONTRACT. Where a contract granting the privilege of using union labels provided that, on its termination, all labels and cuts should be returned, an injunction enjoining its "use" is in conformity to the terms of the contract; "use" not being confined to physical possession alone.

[3] PLEADING (185)—TRADEMARKS AND TRADE NAMES (9)—VARIANCE —PARTIES OR PERSONS. In an action to enjoin the use of union labels, it is not a material variance that the suit was brought by a local union, and the label bears the name "international union," where the local was a member of the international, from which it received the labels for authorized use, all of which appeared in the evidence.

[4] TRIAL (33)—REOPENING CASE FOR FURTHER EVIDENCE—AFTER MOTION. It is not an abuse of discretion to refuse to reopen a case for the admission of a prior contract, as further evidence as to the meaning of the written contract in suit, which was unambiguous, and would not be aided by the prior contract.

Appeal from a judgment of the superior court for Pierce county, Hodge, J., entered December 16, 1927,

[1]Reported in 268 Pac. 161.

upon findings in favor of the plaintiff, in an action for injunction, tried to the court. Affirmed.

*Guy E. Kelly* and *Thomas MacMahon,* for appellants,

*L. B. Sulgrove,* for respondent.

Askren, J.—This appeal is from a permanent injunction restraining the defendants from the use of a union label upon laundry slips.

Certain of the defendants are owners of the Quality Laundry in the city of Tacoma; certain others are laundry drivers employed by the Quality Laundry and certain others are what may be termed laundry contractors, *i. e.,* men who own their own cars and laundry routes and contract with the Quality Laundry for the doing of the work.

For some time prior to August 3, 1925, the Quality Laundry had been operating as a union laundry. On that date, a new contract with the local laundry union was entered into for the following year. The material parts of the contract necessary to be noticed in disposing of this case are:

"Article VII

"That in consideration of the signing and carrying out of this agreement, the employer is granted the privilege of using the union label or stamp of the Laundry Workers International Union during the life of this agreement, with the understanding that in the event that this agreement is terminated, all label cuts or stamps furnished shall be returned without cost to the Union and all claims to their further use surrendered.

"This agreement shall remain in force and effect from the date of signing until the first day of June, 1926, and for thirty (30) days thereafter; during said thirty (30) days either party to this agreement may serve notice upon the other of their desire to have

the same changed. In the event that neither party expresses any desire to have this contract changed during the period above mentioned, it shall then continue in effect until the first day of June, 1927."

The contract was extended by mutual agreement of the parties until June 1, 1927.

Unable to reach any agreement for a new contract at the expiration of the old one, a strike was called by the union, and since June 1, 1927, the Quality Laundry has operated without any agreement with the union.

During the time the contract was in force, the laundry used what is called the union label upon the laundry slips furnished to its customers, drivers and the defendants, which we have referred to as contractors, who in turn used them for their own customers.

At the time the agreement between the parties was terminated, the laundry had on hand several thousand of these slips bearing the union label. Many of these had been distributed and were in use in the laundry wagons, and some, perhaps, in the hands of customers. The union label cuts were re-delivered to the union upon demand, but the laundry claimed the right to continue the use of the slips bearing the label until they had been used up. They collected in, however, many of the unused slips and all new ones printed thereafter bore no union label.

[1] It was to restrain the use of any of the slips bearing the label that this action was instituted. The evidence disclosed that some of these slips were still being used, although we think it established that the laundry was not, of its own volition, distributing any of them.

After a full hearing, the court issued its permanent injunction, the material portion of which is:

"It Is Ordered, Adjudged and Decreed, and this does order, adjudge and decree, that the defendants

be and they hereby are enjoined and restrained from distributing laundry slips in the conduct of their business, bearing the label of the Laundry Workers International Union No. 42, or without first blotting out or obliterating the said label before allowing the same to leave the defendants' possession."

It will be seen that the court, by its injunction, has restrained the appellants from distributing slips, but has not required that such slips as are now distributed and liable to fall into the hands of those desiring laundry service and which bear the union label shall be collected. It also requires that, when and as they are used by such persons in sending laundry to the appellants, they shall have the label stricken from them before they are returned. It is plain that the purpose of such an order is to prevent the appellants from delivering finished laundry with a slip thereon indicating that the work has been done by a laundry working under an agreement with the union. It is equally apparent that the injunction is mild in character and clearly just between the parties, if the court had a right to restrain the continued use of the slips.

Appellants urge that the court should not have provided against the distributing of these slips, because there was no evidence that, after the agreement had terminated, there had been any slips distributed.

In connection with this point, it should be borne in mind that the trial court assessed no costs against the appellants and that no harm can come to them because they are so restrained. The evidence showed that a large number of slips bearing the union label had been collected by the appellants. It is admitted that, if they have no right to return the union label slips to customers without striking the union label therefrom, it follows that they cannot rightfully distribute them in the first place. We conclude that no error can arise

by the insertion of this portion of the restraining order.

[2] It seems to us that the court has enjoined the use of the label in conformity with the contract entered into by the parties. It will be noticed that the agreement provides that the employer was granted the privilege of using the label, but with the understanding that, when the contract was terminated, "all labels, cuts or stamps furnished shall be returned without cost to the union and all claims to their further use surrendered."

Appellants have sought in this court to limit the meaning of the word "use," contending that the label cut has been returned to the respondents, and that appellants have not made physical use of it for the purpose of printing any new matter since the agreement terminated. They urge that they have, therefore, made no *use* of the label cut within the clear meaning of this provision of the agreement. But we think it would do violence to the intent of the parties to so limit these words. The purpose of this provision is, of course, well known to every one. Those employers who operate under an agreement with the union usually consider that certain benefits flow therefrom, not the least of which is the privilege of advertising that fact and thereby gain patronage from those who prefer to deal with employers whose workers belong to the union. The label cut, so far as the physical properties in it are concerned, is of no value to the employer, unless he can place its imprint upon his advertising matter and stationery. The "use" he contracts for is not the physical possession alone, but the right to circulate its *facsimile* to the world as he sees advantageous to himself. If that is the measure of the right he contracts for and is entitled to have awarded to him under his contract, it follows that it

must be the measure of the right he forfeits when his contract is terminated.

. [3] Error is urged upon the ground that there was a material variance between the complaint, proof and decree. Tersely stated, the point appellants make is this: The plaintiff brought this suit as secretary and business agent of the Laundry Workers Union, Local No. 42. The label bears the words "Laundry Workers International Union, Harry L. Morrison, Gen. Sec., No. 42—Registered."

The fact that one is marked as an international union, and the other as a local is said to show that any rights to the use of the label belong to the international and not to the local. An examination of the evidence, however, discloses that the plaintiff local belongs to the international and is a local chapter thereof; that it received the label cut in question from the international for the specific kind of use made of it under the agreement between the parties; that the correct technical name of respondents' local would be "Laundry Workers International Union, Local No. 42"; and that the label cut had been registered in Washington, D. C., by the International Union in 1915, and by the local in the secretary of state's office at Olympia in August, 1927, prior to the institution of this suit, conformably to Rem. Comp. Stat., § 11539.

These facts clearly show the authority to use the label cut, to contract for its use with the appellants, and to maintain an action for its misuse. See Rem. Comp. Stat., § 11541 [P. C. § 7105]. There is no material variance, nor were appellants misled in any way by the technical difference in the names.

[4] Error is predicated upon the refusal of the court to grant a new trial after announcement of its oral decision. Admission is made that the trial court, under our oft-repeated rule, was entitled to exercise

its discretion in determining whether the case should be reopened for further testimony. The matter sought to be shown was that a previous agreement between the same parties had contained a provision that the appellants should "use no printed matter bearing this label," after the expiration of the contract. The absence of such words in the present contract might have much bearing upon the right to use the laundry slips in question, were we to think the clause in the present contract ambiguous or restrictive. But we think the meaning so clear that the provisions of the prior contract would not be helpful in determining the matter. Certainly there was no abuse of discretion in refusing to reopen the controversy.

Some other points are urged, but we deem them not requiring discussion in this opinion.

Judgment affirmed.

FULLERTON, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.